1   Joshua H. Haffner, SBN 188652
2   jhh@haffnerlawyers.com
    Graham Lambert, SBN 303056
3   gl@haffnerlawyers.com
4   **HAFFNER LAW PC**
    445 South Figueroa Street, Suite 2625
5   Los Angeles, California 90071
6   Tel: (213) 514-5681
    Fax: (213) 514-5682
7
8   Attorneys for Plaintiff Constantin Cristian
    Pauna
9

10
11              **UNITED STATES DISTRICT COURT**
12             **CENTRAL DISTRICT OF CALIFORNIA**
13

| | |
|---|---|
| CONSTANTIN CRISTIAN PAUNA, an individual; | CASE NO.: 5:19-cv-01365-TJH (SPX) |
| Plaintiffs, | **SECOND AMENDED COMPLAINT FOR:** |
| v. | **(1) BREACH OF CONTRACT;** |
| ZURICH AMERICAN INSURANCE CO. and DOES 1-10, inclusive, | **(2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND** |
| Defendants. | **(3) VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION ACT ("UCL"), Bus. & Prof. Code § 17200, et seq.** |
| | **DEMAND FOR JURY TRIAL** |

— 1 —

Plaintiff Constantin Cristian Pauna ("Plaintiff"), alleges as follows:

## **NATURE OF ACTION**

1.     This is an action for Defendant Zurich's wrongful conduct in depriving Plaintiff of adequate compensation for work-related injuries.

2.     Plaintiff was insured through an insurance program created by Defendant Zurich American Insurance Co. ("Zurich American Insurance Co.") which sells and issues a group occupational accident policy ("OAC Policy") for truck drivers.  Plaintiff was injured while working as a truck driver.

3.     Plaintiff did not receive a copy of the OAC Policy or any adequate disclosures of coverage exclusions or limitations, as required by California law. Thus, Plaintiff did not have the required notice of the severe limitations of the OAC Policy prior to his injury and making a claim.

4.     As a result of Defendant's wrongful conduct, Plaintiff has wrongfully been denied benefits under the OAC policy.

5.     Plaintiff has been damaged as a result of Defendant's unlawful conduct.  Plaintiff brings this action for compensatory damages, restitutionary disgorgement and injunctive relief.

## **PARTIES**

6.     Plaintiff Constantin Cristian Pauna is an individual and, at all relevant times, was a California resident.  At all relevant times, Plaintiff was insured under an occupational accident policy issued and/or obtained by Defendant and AAA Freight.

7.     Plaintiff is informed, believes, and thereon alleges that Defendant Zurich American Insurance Co. is an New York insurance company authorized to conduct, and actually conducting, the business of insurance in the State of California.

— 2 —

8.      Plaintiff is informed, believes, and thereon alleges that Zurich American is the entity named as the insurer issuing the group policy at issue in this action.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the entire action by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of the Court.  The acts and omissions complained of in this action took place, in whole or in part, in the state of California.  The insurance contract at issue was entered into in California and covers property located in the state of California.

10.     Venue is proper because the contract was entered into, performance was due, and/or the acts and omissions complained of took place within the venue of this Court, and/or a Defendant resides within the venue of this Court.

## GENERAL ALLEGATIONS

11.     Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names DOES 1 through 10, inclusive, and therefore, sues such defendants by such fictitious names.  Plaintiff will amend this complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named DOE defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

12.     Plaintiff is informed, believes, and thereon alleges that all defendants, including the fictitious DOE defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners, and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture,

1  conspiracy, and/or enterprise, and with the express and/or implied permission,

2  knowledge, consent, authorization, and ratification of their co-defendants; however,

3  this allegation is pleaded as an "alternative" theory wherever not doing so would

4  result in a contradiction with other allegations.

5      13.    All allegations in this complaint are based on information and belief

6  and/or are likely to have evidentiary support after a reasonable opportunity for

7  further investigation or discovery.  Whenever allegations in this complaint are

8  contrary or inconsistent, such allegations shall be deemed alternative.

9  **FACTUAL ALLEGATIONS RELATING TO PLAINTIFF**

10      14.    Plaintiff worked as a driver for AAA Freight.  As a condition of his

11  work for AAA Freight, Plaintiff purchased coverage under Defendants' OAC

12  policy.  Defendant Zurich American Insurance Co. issues the OAC policy to a

13  named insured and/or contract holder, who Plaintiff is informed and believes is

14  AAA Freight.  Among other things, the coverage under the OAC policy provided

15  for medical expenses and disability payments for work-related injuries.  (Attached

16  as Exhibit A is a true and correct copy of what Plaintiff is informed and believes is

17  the Zurich American Insurance Co.'s OAC Policy.)  The premiums for coverage

18  under the OAC Policy were deducted from Plaintiff's pay by AAA Freight and

19  transmitted to Defendant Zurich American Insurance Co.

20      15.    The coverage under the OAC Policy is more limited coverage than

21  would be available under California's workers' compensation system.  The OAC

22  policy has punitive provisions which essentially forfeits coverage if a driver makes

23  a workers compensation claim, and has other exclusions and limitations that render

24  coverage illusory and/or wholly inadequate.

25      16.    Plaintiff did not receive the OAC Policy or any adequate description of

26  coverage at the time the coverage was sold to him, or at anytime prior to his injury

27  and submission of the insurance claim.  Plaintiff did not have any adequate notice

28  of the severe limitations of coverage, including but not limited to, the workers

— 4 —

compensation limitation, short period of payments, or small caps on monthly
payments, prior to his injury and submission of the insurance claim.

17.    On or about March 14, 2019, while working, Plaintiff was assaulted by
another trucker at a gas station and suffered a work-related injury.  As a result,
Plaintiff required medical care and became disabled.  Plaintiff has not returned to
work as a truck driver.

18.    On or about March 16, after his injury, Plaintiff made an insurance
claim to Defendants for benefits under the OAC policy, claim number 7370068686.
Plaintiff also made a claim for workers' compensation benefits to AAA Freight.

19.    Plaintiff is informed and believes, and on that basis alleges, that
Defendant Zurich American Insurance Co.'s defended the workers compensation
claim filed by Plaintiff pursuant to a contingent liability policy.  Plaintiff is
informed and believes, and on that basis alleges, that Defendant Zurich American
Insurance Co. issues a contingent liability policy concurrently with the OAC policy.

20.    On May 3, 2019, Defendant wrote to Plaintiff and advised him that
because he had made a workers' compensation claim, his benefits under the OAC
policy were suspended, and would not be reinstated unless the workers
compensation claim was withdrawn or dismissed.  This decision was based on
limitations in the OAC policy which had not been disclosed to Plaintiff prior to his
injury.  Plaintiff's benefits for his work related injury would not have been
suspended under the workers' compensation system, and would have been
significantly more than was available under the OAC Policy.  The decision to limit
and/or terminate Plaintiff's benefits based on policy provisions not disclosed to
Plaintiff was improper.  Because of Defendants' wrongful conduct, Plaintiff did not
receive proper compensation for his work-related injury and disability.

21.    The May 3, 2019 correspondence was the first time Defendant cited in
correspondence to Plaintiff the workers' compensation limitation as potentially
impacting Plaintiff's claim.  Defendant's failure to disclose in any correspondence

— 5 —

**Second Amended Complaint**

with Plaintiff prior to May 3, 2019 the workers compensation limitation violated

California Code of Regulations, Title 10, §2695.4(a).

22.    As a result of Defendants' conduct, Plaintiff has been damaged,

including but not limited to, failure to receive adequate benefits for his work injury

and disability, and/or paying insurance premiums for illusory and/or inadequate

coverage.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

### (Against Defendant Zurich American Insurance Co. and Does 1-5)

23.    Plaintiff re-alleges and incorporates by reference the allegations

contained in the preceding paragraphs of this complaint, as though fully set forth

herein.

24.    Plaintiff paid consideration in the form of premiums, and faithfully

performed all obligations required to be performed by them under the terms of the

insurance contracts Defendant Zurich American Insurance Co. issued, except to the

extent performance may have been excused by, among other things, Defendants'

bad faith conduct and breach of the insurance policies.

25.    Plaintiff was insured under a valid insurance policy issued by

Defendant Zurich American Insurance Co., which was in effect on the date of

Plaintiff's loss alleged herein, which loss was covered under the policy.

26.    Plaintiff made a claim to Defendant Zurich American Insurance Co.

for insurance benefits.  Defendant Zurich American Insurance Co. breached the

policy by failing to pay adequate benefits for Plaintiff's claim, enforcing

undisclosed policy exclusions and/or limitations, and limiting and/or terminating

payment of benefits on Plaintiff's claim.  Defendants breached the terms of the

insurance contract by failing to pay monies due under the contract, failing to

properly investigate or adjust the claim, delaying payment of policy benefits, and by

forcing Plaintiff to institute this litigation.

— 6 —

27.     Plaintiff did not receive a copy of the OAC Policy prior to his accident, and did not have adequate disclosure of the OAC Policy exclusions and limitations of the Policy relied on by Defendant Zurich to limit and/or deny Plaintiff's claim.

28.     As a result of Defendants' breach(es) of contract, Plaintiff has suffered significant damages, including but not limited to, the loss of policy benefits, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Defendant Zurich American Insurance Co. and Does 1-5)

29.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

30.     The policy identified in this action contained an implied covenant of good faith and fair dealing, whereby Defendants agreed to perform their obligations under the policies in good faith, to deal fairly with Plaintiff, and not to unreasonably deprive Plaintiff of the benefits due under the policies.

31.     Defendants tortiously breached the implied covenant of good faith and fair dealing arising from the insurance contract by unreasonably failing to pay Plaintiff's claim, conduct a fair and objective investigation, failing to look for or acknowledge covered losses, engaging in a bad faith pattern and practice of wrongfully denying benefits, and by other conduct, including but not limited to that expressly set forth in this complaint, after accepting insurance premiums from Plaintiff.

32.     Defendants engaged and continue to engage in a course of conduct to further their own economic interest, in violation of their obligations to Plaintiff. This conduct includes, but is not limited to, that conduct alleged in this complaint and the following:

— 7 —

A.    Misrepresenting pertinent facts or insurance policy provisions relating to the coverages at issue;

B.    Failing to comply with Insurance Code §§10604-10605;

C.    Failing to thoroughly, promptly, and objectively investigate Plaintiff claim;

D.    Failing to advise Plaintiff of applicable policy benefits;

E.    Failing to acknowledge and act reasonably promptly upon communication with Plaintiff;

F.    Limiting and/or terminating  payment of benefits on Plaintiff's claim based on undisclosed policy provisions;

G.    Refusing to pay insurance benefits which a reasonable person would have believed Plaintiff was entitled to receive;

H.    Not attempting in good faith to effectuate prompt, fair, and equitable settlement of Plaintiff's claim for benefits;

I.    Engaging in a pattern and practice of bad faith claims handling which renders coverage illusory;

J.    Wrongfully relying on policy limitations or exceptions Plaintiff did not have adequate notice of;

K.    Failing to adopt and implement reasonable standards for the prompt investigation and processing of the claims asserted by Plaintiff; and

L.    Plaintiff is informed, believes and thereon alleges, that Defendants have breached their duty of good faith and fair dealing owed to Plaintiff by other acts or omissions of which Plaintiff is presently unaware and which will be shown according to proof at the time of trial.

— 8 —

33.    Defendants' conduct described herein constitutes part of Defendants' overall scheme to reduce the costs of legitimate insurance claims.  Defendants' conduct as described herein constitutes an illegal pattern and practice.

34.    Without any reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, Defendants have failed and refused to act in good faith or act fairly toward Plaintiff, and Defendants have, in bad faith, failed and refused to perform their obligations under the insurance policy, and under the laws of the State of California.

35.    As a direct and proximate result of the actions of Defendants, Plaintiff has incurred substantial damages including, but not limited to, economic damages, emotional distress, and other damages in an amount to be proven at trial.

36.    As a direct, proximate, and legal result of said breaches of the covenant of good faith and fair dealing by Defendants, Plaintiff have been required to expend attorneys' fees and costs, and pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813, Plaintiff is entitled to attorneys' fees and costs reasonably incurred to compel the payment of benefits due under the insurance policies.

37.    On the basis of all of the facts alleged hereinabove, Defendants' conduct and actions were despicable, and were done maliciously, oppressively and fraudulently, with a willful and conscious disregard of Plaintiff's rights, thereby subjecting Plaintiff to unjust hardship and distress, entitling Plaintiff to punitive damages under California Civil Code section 3294.  Plaintiff is also entitled to treble punitive damages under Civil Code section 3345.

38.    As to all Defendants, the officers, directors and managing agents were personally involved in the decision-making process with respect to the misconduct alleged herein and to be proven at trial.  As to the conduct alleged herein to have been engaged in by representatives of Defendants, their officers, directors and managing agents authorized and/or ratified each and every act on which Plaintiff's allegations of punitive damages herein are based.

### THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION ACT ("UCL")

### BUS. & PROF. CODE § 17200 ET SEQ.

**(By Plaintiff, against Defendants and Does 1 through 10, inclusive)**

39.     Plaintiff re-alleges and incorporates herein by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

40.     The conduct of Defendants, as set forth in the allegations in this complaint, constitutes an unlawful business practices under California Business & Professions Code sections 17200, *et seq.* Defendants' conduct is unlawful, fraudulent, or unfair under California Business & Professions Code sections 17200, *et seq.*

41.     Plaintiff brings this complaint under the unlawful prong of California Business & Professions Code section 17200, *et seq.*  Defendants' unlawful conduct includes but is not limited to, (i) attempting to enforce OAC policy limitations it knows were not disclosed Plaintiff prior to his accident and submission of a claim, in violation of California common law; and (ii) violating California Code of Regulations, Title 10, §2695.4(a) by failing to cite the workers compensation as potentially applicable to Plaintiff's claim after he made the claim.

42.     Defendants' conduct is unfair under California Business & Professions Code sections 17200, *et seq.* because they entered into a scheme to facilitate denial of adequate compensation for drivers' work-related injuries.  Defendants' conduct violated, among other things, California's public policy to compensate injured workers, to allow for redress in the Courts, and to avoid forfeiture of insurance benefits, all of which constitutes an unfair conduct under California Business & Professions Code sections 17200, *et seq.*

43.     As a result of Defendants' conduct, Plaintiff has been damaged, including but not limited to paying insurance premiums for inadequate and/or illusory coverage.

44.     Plaintiff lacks an adequate remedy at law because, among other things, these is no direct cause of action for Defendants' unlawful violation California Code of Regulations, Title 10, §2695.4(a) and/or to fully or properly redress the unfair practices, and restitution and/or disgorgement is not an available under the common law causes of action.

45.     Plaintiff requests that this court order that Defendants be required to provide restitution and/or disgorge the profits, including but not limited to premiums, they have wrongfully obtained through the use of these unlawful practices, provide restitution, and that an injunction be issued to correct the wrongful conduct and business practices alleged in this complaint.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

## **FOR BREACH OF CONTRACT**

### **(FIRST CAUSE OF ACTION)**

1.     For general, special, compensatory and incidental damages for breach of contract, in an amount to be determined at trial, plus prejudgment interest and other damages according to proof;

## **FOR BREACH OF IMPLIED COVENANT OF**

## **GOOD FAITH AND FAIR DEALING**

### **(SECOND CAUSE OF ACTION)**

1.     For general, compensatory damages, plus prejudgment interest and other damages according to proof;

2.     For special and consequential damages; and

3.     For punitive and exemplary damages according to proof.

— 11 —

## FOR VIOLATION OF CALIFORNIA'S  UNFAIR COMPETITION ACT

### (THIRD CAUSE OF ACTION)

1.    For restitution and/or disgorgement of all profits Defendants obtained as a result of unlawful, unfair, and/or fraudulent business practices;

2.    For an appropriate injunction; and

3.    For attorney fees pursuant to Code of Civil procedure section 1021.5.

## FOR COSTS OF SUIT AND OTHER RELIEF

### (EACH CAUSE OF ACTION)

1.    For costs of suit herein;

2.    For pre-judgment interest as provided for by applicable law, and

3.    For such further relief as the Court may deem just and proper.


DATED:  August 20, 2020            **HAFFNER LAW PC**

By: /s/ Graham G. Lambert
Joshua H. Haffner
Graham G. Lambert
Attorneys for Plaintiff

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for himself on all claims so triable.

DATED:  August 20, 2020                **HAFFNER LAW PC**

                                  By:     /s/ Graham G. Lambert
                                          Joshua H. Haffner
                                          Graham Lambert
                                          Attorneys for Plaintiff

**Second Amended Complaint**

EXHIBIT A

# Truckers Occupational Accident Insurance Certificate



**ZURICH AMERICAN INSURANCE COMPANY**
1299 Zurich Way
Schaumburg, Illinois 60196-1056

This is a summary of the accident insurance **We** provide on behalf of the **Policyholder** to **You** if **You** are within a class of eligible persons described in the **Schedule** and if the required premiums are paid when due.

BENEFITS ARE REDUCED UPON ATTAINMENT OF SPECIFIED AGES.

THE INSURANCE EVIDENCED BY THIS CERTIFICATE PROVIDES ACCIDENT COVERAGE ONLY.

THE POLICY DOES NOT PROVIDE COVERAGE FOR SICKNESS.

THIS IS A SUMMARY OF COVERAGE ONLY WHICH SUMMARIZES AND EXPLAINS THE PARTS OF THE POLICY WHICH APPLY TO YOU.

FOR ALL TERMS AND CONDITIONS OF COVERAGE, PLEASE REVIEW THE POLICY ISSUED TO THE POLICYHOLDER AND ON FILE WITH THEM AT THEIR PLACE OF BUSINESS. YOU CAN OBTAIN A COPY OF THE POLICY FROM THE POLICYHOLDER.

THIS CERTIFICATE IS NOT AN INSURANCE POLICY. IN THE EVENT OF A CONFLICT OF PROVISIONS BETWEEN THE POLICY AND THIS CERTIFICATE, THE PROVISIONS OF THE POLICY WILL GOVERN.

IMPORTANT NOTICE
THIS IS NOT A WORKERS' COMPENSATION POLICY AND IS NOT A SUBSTITUTE FOR WORKERS' COMPENSATION COVERAGE.

PLEASE READ THIS CERTIFICATE CAREFULLY

U-OA-402-A IL (08/09)

Page 1 of 22

EXHIBIT 2
31

## TABLE OF CONTENTS

SECTION I           SCHEDULE

SECTION II          GENERAL DEFINITIONS

SECTION III         EFFECTIVE DATES AND TERMINATION DATES

SECTION IV          PREMIUMS

SECTION V           BENEFITS

SECTION VI          ADDITIONAL BENEFITS

SECTION VII         LIMITS OF LIABILITY

SECTION VIII        GENERAL EXCLUSIONS AND LIMITATIONS

SECTION IX          CLAIM PROVISIONS

SECTION X           GENERAL PROVISIONS

U-OA-402-A IL (08/09)

EXHIBIT 2

32

**THIS CERTIFICATE IS NOT WORKERS' COMPENSATION AND DOES NOT REQUIRE PRE-AUTHORIZATION OF A PHYSICIAN FOR COVERED SERVICES OR TREATMENT. YOU MAY CONSULT US AT 1-888-889-5330 TO DETERMINE IF A SERVICE OR TREATMENT IS COVERED.**

**YOU** CANNOT BE COVERED BY ANY OTHER OCCUPATIONAL ACCIDENT POLICY ISSUED BY **US**. IF **YOU** PAY PREMIUM BUT ARE NOT ELIGIBLE FOR COVERAGE OR DO NOT QUALIFY FOR BENEFITS UNDER THE **POLICY**, **WE** WILL REFUND ANY UNEARNED PREMIUM PAID IN ERROR.

### SECTION I - SCHEDULE

Policy Effective Date:    04/27/2018        **Your** Premium: **Refer to Policyholder**

**Policy Period:**    04/27/2018 and continuous thereafter until terminated

Policy Premium Due Date:    04/27/2018    **Policyholder:**   AAA FREIGHT INC

Policy Number:    OCA 0281508-01                     11805 SOUTH CENTRAL PARK AVE

                                                        MERRIONETTE PARK, IL  60803

### Eligible Persons

**You** are eligible to become an **Insured Person** under the **Policy** if **You** meet the following criteria:

CLASS I:    **Actively at Work Owner/Operator** who has enrolled for coverage under this **Policy.**

CLASS II:    **Actively at Work Contract Driver** who has enrolled for coverage under this **Policy.**

### Benefits Summary

|  |  | Occupational Injuries | Non-Occupational Injuries |
|---|---|---|---|
| [X] | Accidental Death Benefit: |  |  |
|  | **Principal Sum\*** | $25,000 | $15,000 |
|  | **Commencement Period** | 365 days | 365 days |
|  |  |  |  |
| [X] | Survivor's Benefit: |  |  |
|  | **Principal Sum\*** | $175,000 | N/A |
|  | Monthly Benefit Percentage of **Principal Sum** | 1.00% | N/A |
|  | **Monthly Benefit Amount** | $1,750 | N/A |
|  |  |  |  |
| [X] | Accidental Dismemberment Benefit: |  |  |
|  | **Principal Sum\*** | $200,000 | $15,000 |
|  | **Commencement Period** | 365 days | 365 days |
| [X] | Accidental Paralysis Benefit: |  |  |
|  | **Principal Sum\*** | $200,000 | $15,000 |
|  | **Commencement Period** | 365 days | 365 days |
|  |  |  |  |

U-OA-402-A IL (08/09)

**EXHIBIT 2**

| | | | |
|---|---|---|---|
| [X] | Accident Medical Expense Benefit: | | |
| | **Commencement Period** | 180 days | 180 days |
| | **Deductible Amount** | $0 | $0 |
| | **Maximum Benefit Amount** | $1,000,000 | $10,000 |
| | **Maximum Benefit Period** | 104 weeks | 52 weeks |
| | Dental Benefit Maximum | $1,000,000 | $1,000 |
| | **Lifetime Maximum Benefit Amount** | $1,000,000 | $10,000 |
| | Physical, Occupational, or Work Hardening Therapies | To a maximum-combined 36 visits | To a maximum-combined 36 visits |
| | Ambulance for Medically Necessary Services | 1 round trip to and from a **Hospital** to a Maximum of $10,000 per **Accident** | 1 round trip to and from a **Hospital** to a Maximum of $10,000 per **Accident** |
| | Acupuncture Care and Chiropractic Care | $1,000 per **Injury** | $1,000 per **Injury** |
| | **Mental and Nervous or Depressive Condition** | 1 visit(s) per day to a maximum of $25 per visit and 20 visits per **Accident** | 1 visit(s) per day to a maximum of $25 per visit and 20 visits per **Accident** |
| | | | |
| [X] | Temporary Total Disability Benefit: | | |
| | **Commencement Period** | 180 days | 180 days |
| | **Waiting Period** | 7 days | 14 days |
| | Benefit Percentage | 70% | 70% |
| | **Minimum Weekly Benefit Amount** | $125 | $125 |
| | **Maximum Weekly Benefit Amount** | $500 | $500 |
| | **Maximum Benefit Period\*\*** | 104 weeks | 13 weeks |
| | | | |
| [X] | Continuous Total Disability Benefit: \*\*\* | | |
| | **Waiting Period** | equals **Maximum Benefit Period** for **Temporary Total Disability** | N/A |
| | Benefit Percentage | 70% | N/A |
| | **Minimum Weekly Benefit Amount** | $50 | N/A |
| | **Maximum Weekly Benefit Amount** | $500 | N/A |
| | **Maximum Benefit Amount** | $1,000,000 | N/A |
| | **Maximum Benefit Period** | Up to age 70, but not beyond full Social Security retirement age | N/A |
| | | | |
| [ ] | Additional Benefits: | | |
| | | | |
| [X] | Limits of Liability: | | |
| | **Combined Single Limit of Liability** | $1,000,000 | $15,000 |
| | **Aggregate Limit of Liability** | $2,000,000 | $30,000 |
| | Sub Limits of Liability: | | |
| | **Combined Single Limit of Liability** for: | | |
| | **Pre-Existing Conditions** | $10,000 | N/A |
| | **Occupational Disease** | $50,000 | N/A |
| | **Occupational Cumulative Trauma** | $50,000 | N/A |

U-OA-402-A IL (08/09)

EXHIBIT 2

\*     Starting at age 65, the **Principal Sum** shall be based on the following schedule:

| Age at Date of Loss | Percent of **Principal Sum** |
|---|---|
| 65 | 80% |
| 66 | 60% |
| 67 | 40% |
| 68 | 20% |
| 69 | 15% |
| 70 and over | 10% |

\*\*    If **You** suffer an **Injury** at or after age 70, the **Maximum Benefit Period** shall be one (1) year.

\*\*\*   If **You** sustain an **Injury** within six months or less of attaining **Your** full Social Security retirement age, as defined by the United States Social Security Administration, **You** do not qualify for the Continuous Total Disability Benefit.

## SECTION II - GENERAL DEFINITIONS

**Accident** means an unintended or unforeseeable event or occurrence that occurs while coverage is in effect under the **Policy**.

**Actively at Work** means under **Dispatch** for at least 30 hours each week.

**Aggregate Limit of Liability** shown in the **Schedule** is the maximum amount **We** will pay under the **Policy** for all **Covered Losses** with respect to all **Insured Persons** arising out of all **Injuries** sustained as the result of any one **Accident**.

**Assignment** means the **Policyholder** has offered and **You** have accepted a shipment of freight as recorded in the books and records of the **Policyholder** in the ordinary course of business.

**Certificate** means this Truckers Occupational Accident Insurance Certificate.

**Company** means Zurich American Insurance Company.

**Co-Owner** means a person who has partial ownership of a vehicle operating as an **Owner/Operator**.

**Combined Single Limit of Liability** means, with respect to **You**, the maximum amount that **We** will pay for all **Covered Loss** under the **Policy** for or in connection with **Injury** to **You** resulting from any one **Accident**. When the **Combined Single Limit of Liability** has been reached, no further benefits shall be payable under the **Policy**, with respect to You, for or in connection with **Injury** sustained as the result of that one **Accident**.

**Commencement Period** means the period between the date of the **Accident** that caused the **Injury** and the date on which the **Covered Loss** must occur for benefits to be payable under the Accidental Death Benefit, the Accidental Dismemberment Benefit, Accidental Paralysis Benefit, Accident Medical Expense Benefit and/or the Temporary Total Disability Benefit.

**Contract Driver** means an individual who:
1. has a valid and current commercial driver's license on the effective date of enrollment;
2. is authorized by an **Owner/Operator** to operate a power unit owned or leased by an **Owner/Operator** and must neither own nor lease the power unit;
3. is compensated on a basis other than time expended in the performance of work;
4. is responsible for determining the route and time for **Assignment**;
5. has the principal duty to operate the power unit;
6. is classified as an independent contractor by the **Policyholder** and the **Owner/Operator** who has engaged his or her services and not as an employee for purposes of workers' compensation insurance, federal income taxes, state income taxes, social security, unemployment insurance, or for any other purpose, unless workers' compensation coverage is not mandatory for such person as an employee of either the **Policyholder** or Owner/Operator; and
7. receives for federal income tax reporting purposes a 1099 and not a W-2.

**Covered Loss**, in the singular or plural, means one or more of the losses or expenses identified in Sections V and VI of

**EXHIBIT 2**
**35**

this **Certificate** that are not specifically excluded herein.

**Cumulative Trauma or Repetitive Conditions** means **Non-Occupational** conditions that impair the normal physiological function of the body over an extended period, but do not arise as the result of a single **Accident**.

**Dependent Child(ren)** means **Your** unmarried children, including natural children from the moment of birth, step or foster children, or adopted children from the date of the final decree of adoption, who are:
1.  under age 26 if he or she relies on **You** for more than 50% of his or her support and is taken as a dependent on **Your** Federal Income Tax Return;
2.  under age 30 if he or she: (a) is an Illinois resident, (b) served as a member of the active or reserve components of any of the branches of the Armed Forces of the United States, and (c) has received a release or discharge other than a dishonorable discharge; or
3.  incapable of self-sustaining employment by reason of mental or physical incapacity, and who are primarily dependent on **You** for support and maintenance as defined herein.

**We** may require proof of the **Dependent Child(ren)'s** incapacity and dependency within 60 days before the **Dependent Child(ren)** reached the age limit specified above. **We** may request that satisfactory proof of the **Dependent Child(ren)'s** continued incapacity and dependency be submitted to **Us** on an annual basis. If the requested proof is not furnished within 31 days of the request, such child(ren) shall no longer be considered **Dependent Child(ren)** as of the end of that 31 day period.

**Dispatch** means the time during which **You** are on **Assignment** or **You** are performing tasks prior to or after an **Assignment** to prepare the contracted vehicle for a current or future **Assignment**. **Dispatch** must be authorized by the **Policyholder** and includes the following:
1.  in route to pick up a load;
2.  picking up a load;
3.  in route to delivering a load;
4.  unloading a load;
5.  the waiting time for a load;
6.  returning from delivering a load;
7.  in route to, returning from or performing a pre-trip inspection as required by a recognized governmental agency and/or the contracted motor carrier;
8.  while performing vehicle maintenance or  repairs on the contracted vehicle during any of the foregoing times; and
9.  while performing verifiable vehicle maintenance or repairs on the contracted vehicle; and
10. performing activities to comply with federal or state laws or to satisfy contracted motor carrier requirements.

**Eligible Person(s)** means a Class I or Class II individual described in the **Schedule**.

**Household Member** means a person who maintains residence at the same address as **You** and is not an **Immediate Family Member**.

**Immediate Family Member** means **Your Spouse**, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent, stepparent, brother, sister, stepbrother, stepsister, child, child who has been legally adopted, or stepchild.

**Injury**, in the singular or plural, means bodily injury caused by an **Accident**, which occurs while **You** are covered under the **Policy** and the **Injury** must result directly and independently of disease or illness, in a **Covered Loss**. All **Injuries** sustained by **You** in any one **Accident** shall be considered a single **Injury**.

**Insured Person(s)** means an **Owner/Operator** or **Contract Driver**:
1.  who is enrolled for coverage under the **Policy**;
2.  who has paid the required premium when due; and
3.  whose coverage is in effect under the **Policy**.

**Maximum Benefit Amount** means the maximum amount that **We** will pay under the Continuous Total Disability Benefit or the Accident Medical Expense Benefit. The applicable **Maximum Benefit Amount** is shown in the **Schedule**.

**Maximum Benefit Period** means the maximum period that **We** will pay benefits, after the **Waiting Period**, under the Temporary Total Disability Benefit, the Continuous Total Disability Benefit or the Accident Medical Expense Benefit. The applicable **Maximum Benefit Period** is shown in the **Schedule**.

**EXHIBIT 2**

**36**

**Maximum Weekly Benefit Amount** means the maximum amount that **We** will pay each week under the Temporary Total Disability Benefit or the Continuous Total Disability Benefit.  The applicable **Maximum Weekly Benefit Amount** is shown in the **Schedule**.

**Mental and Nervous or Depressive Condition** means mental, nervous or emotional diseases or disorders of any type including schizophrenia, dementia, organic brain syndrome, delirium, amnesia syndromes, and organic delusional or hallucinogenic syndromes.

**Minimum Weekly Benefit Amount** means the minimum amount that **We** will pay each week under the Temporary Total Disability Benefit or the Continuous Total Disability Benefit.  The applicable **Minimum Weekly Benefit Amount** is shown in the **Schedule**.

**Non-Occupational** means benefits payable for an **Injury** due to an **Accident** sustained by **You** while not under **Dispatch**.

**Occupational** means, with respect to an activity, **Accident**, incident, circumstance or condition involving **You**, that the activity, **Accident**, incident, circumstance or condition occurs or arises out of or in the course of **You** performing services within the course and scope of contractual obligations for the **Policyholder**, and while under **Dispatch**.  **Occupational** does not encompass any period during the course of everyday travel to and from work, other than as allowed under **Dispatch**, or while on vacation.

**Occupational Assessment** means a test of vocational capabilities, including review of medical records, **Injury** and treatment, history and background (education, military, previous occupation(s)), and evaluation of basic skills such as reading, understanding, spelling and/or math capabilities, and vocational alternatives.

**Occupational Cumulative Trauma** means bodily injury that impairs the normal physiological function of the body caused by the combined effect of repetitive physical **Occupational** activities extending over a period of time and does not arise as the result of a single **Accident**, when:
1. such condition is diagnosed by a **Physician**;
2. **Your** last day of last performance of the activities causing the bodily injury occurred while **Your** coverage is in effect; and
3. such bodily injury resulted directly, and independently of all other causes, in a **Covered Loss**.

**Occupational Disease** means a sickness that results in disability or death, and is caused by exposure to environmental or physical hazards during the course of **Your Occupational** activities, when:
1. such sickness is diagnosed by a **Physician** and is generally accepted by the National Centers for Disease Control to be a disease caused by such hazards;
2. exposure to such hazards is not an **Accident** but is caused or aggravated by the conditions under which **You** perform **Occupational** activities;
3. **Your** last day of last exposure to the environmental or physical hazards causing such sickness occurs while **Your** coverage is in effect; and
4. such exposure results directly and independently of disease or bodily infirmity in a **Covered Loss**.

**Owner/Operator** means an individual who leases to or from the **Policyholder** and:
1. has a valid and current commercial driver's license on the effective date of enrollment;
2. owns or leases a power unit;
3. is responsible for the maintenance and operating costs of the power unit, including, but not limited to fuel, repairs and supplies;
4. is compensated on a basis other than time expended in the performance of work;
5. is responsible for determining the route and time for **Assignment**;
6. has the right to select or reject the load;
7. has a written contract or **Assignment** from the **Policyholder** and is classified as an independent contractor by the **Policyholder** and not as an employee for purposes of workers' compensation insurance, federal income taxes, state income taxes, social security, unemployment insurance or for any other purpose; and
8. receives for federal income tax reporting purposes a 1099 not a W-2.

**Physician** means a qualified medical doctor acting within the scope of his or her license who is not:
1. **You;**
2. an **Immediate Family Member**;

U-OA-402-A IL (08/09)

EXHIBIT 2
37

3.  a **Household Member**; or
4.  a practitioner retained by the **Policyholder**.

**Policy** means the Truckers Occupational Accident Insurance Policy issued to the **Policyholder**.

**Policyholder** means the entity named as **Policyholder** in the **Schedule**.

**Policy Period** means the period shown in the **Schedule**, subject to prior termination pursuant to Section III of the **Policy**.

**Pre-Existing Condition** means a condition for which **You** have sought or received medical advice or treatment at any time during the twelve months immediately preceding **Your** effective date of coverage under the **Policy**.

**Principal Sum** means the maximum amount that **We** will pay under the Accidental Death Benefit, the Survivor's Benefit, the Accidental Dismemberment Benefit or the Accidental Paralysis Benefit.  The applicable **Principal Sum** is shown in the **Schedule** and is subject to the **Combined Single Limit of Liability** and the **Aggregate Limit of Liability**.

**Schedule** means SECTION I of the **Policy** and this **Certificate**.

**Spouse** means **Your** legal spouse.

**Third Party** in the singular or plural means, but is not limited to, the following:
1.  the party that caused the **Accident, Injury** or other medical condition and any insurer or indemnifier thereof;
2.  **Your** insurer including, but not limited to, uninsured motorist, underinsured motorist, medical payment or no-fault insurers; or
3.  any other person, entity, policy or plan that is liable or legally responsible to make payments in relation to the **Accident, Injury** or other medical condition.

**Waiting Period** means the consecutive number of days **You** must be **Temporarily Totally Disabled** or **Continuously Totally Disabled** before benefits become payable under the **Policy**.  Temporary Total Disability Benefits and Continuous Total Disability Benefits are not retroactive to the first day of disability.  The **Waiting Period** is shown in the **Schedule**.

**We**, **Us**, and **Our** means Zurich American Insurance Company.

**You**, **Your**, and **Yourself** means the **Insured Person** to whom a **Certificate** is issued.

## SECTION III - EFFECTIVE DATES AND TERMINATION DATES

**Policy Effective and Termination Dates**
1.  Policy Effective Date.  The **Policy** begins on the Policy Effective Date shown in the **Schedule** at 12:01 A.M. Standard Time at the address of the **Policyholder** where the **Policy** is delivered.

2.  Policy Termination Date.  The **Policy** will terminate at 12:01 A.M. Standard Time at the **Policyholder's** address on the earliest of:
    a.  the Policy Premium Due Date shown in the **Schedule**, subject to the Policy Grace Period set forth in Section IV of the **Policy**;
    b.  the date specified in the written notice of **Our** intent to terminate the **Policy**, which will be at least thirty (30) days after the date **We** send such notice to the **Policyholder's** last known recorded address;
    c.  the date specified in the written notice of the **Policyholder's** intent to terminate the **Policy**, which will be at least thirty (30) days after the date the **Policyholder** sends such notice to **Us**; or
    d.  at the expiration of the **Policy Period**.

    If **We** terminate the **Policy**, any unearned premium will be returned on a pro-rata basis.  If the **Policyholder** requests termination, **We** will return any unearned premium paid on a pro-rata basis.  Termination will not affect any claim for a **Covered Loss** occurring prior to the effective date of termination.

**Owner/Operator's Effective and Termination Dates**
1.  **Owner/Operator's** Effective Date.  An **Owner/Operator's** coverage under the **Policy** begins on the latest of:
    a.  the Policy Effective Date shown in the **Schedule**;
    b.  the date the **Owner/Operator** becomes an **Insured Person**; or
    c.  if an individual application is required, the date the written application is received by the **Policyholder** or an authorized person designated by the **Policyholder**.

**EXHIBIT 2**

**38**

Coverage is not effective until the first premium is paid when due. If premium is paid when due, coverage is effective on the later of a, b or c above. If premium is not paid when due, coverage will not be in effect.

2. **Owner/Operator's** Termination Date: An **Owner/Operator's** coverage under the **Policy** ends on the earliest of:
   a. the date the **Policy** is terminated;
   b. the Policy Premium Due Date shown in the **Schedule**, subject to the Policy Grace Period set forth in Section IV of the **Policy**;
   c. the date the **Owner/Operator** requests, in writing, that his or her coverage be terminated; or
   d. the date the **Owner/Operator** ceases to be an **Insured Person**.

### Contract Driver's Effective and Termination Dates

1. **Contract Driver's** Effective Date. A **Contract Driver's** coverage under the **Policy** begins on the latest of:
   a. the Policy Effective Date shown in the **Schedule**;
   b. the date the **Contract Driver** becomes an **Insured Person**; or
   c. if an individual application is required, the date the written application is received by the **Policyholder** or an authorized person designated by the **Policyholder**.

   Coverage is not effective until the first premium payment is paid when due. If premium is paid when due, coverage is effective on the later of a, b or c above. If premium is not paid when due, coverage will not be in effect.

2. **Contract Driver's** Termination Date. A **Contract Driver's** coverage under the **Policy** ends on the earliest of:
   a. the date the **Policy** is terminated;
   b. the Policy Premium Due Date shown in the **Schedule**, subject to the Policy Grace Period set forth in Section IV of the **Policy**;
   c. the date the **Contract Driver** requests, in writing, that his or her coverage be terminated;
   d. the date the **Contract Driver** ceases to be an **Insured Person**; or
   e. the date the **Owner/Operator**, with whom the **Contract Driver** is under contract, ceases to be an **Insured Person** and/or whose contract with the **Policyholder** terminated.

A change in **Your** coverage under the **Policy** due to a change in **Your** eligible class or benefit selection becomes effective on the later of: (1) the date the change in **Your** eligible class or benefit selection occurs; or (2) if premium change is required, the date the first changed premium is paid. However, a change in coverage applies only with respect to **Accidents** that occur after the change becomes effective.

## SECTION IV - PREMIUMS

### PREMIUMS

Premiums are payable to **Us** in the amount shown in the **Schedule**. **We** may change the required premiums due by giving the **Policyholder** at least thirty (30) days advance written notice. **We** may change the required premiums as a condition of any renewal of the **Policy**. **We** may also change the required premiums at any time when any change affecting premiums is made in the **Policy**.

**We** may re-underwrite and may change the terms and conditions of the **Policy** including the premium rate on the date when the number of **Insured Persons** under the **Policy** exceeds or is less than the number of **Insured Persons** in the prior month by fifteen percent (15%) or more. The **Policyholder** shall provide **Us** with written notice of such increase or decrease in the number of **Insured Persons** at least thirty (30) days prior to the effective date of such change.

### PLAN AND EXPOSURE CHANGES

The **Policyholder** must notify **Us** of any subsidiary or affiliated company that is to be covered under the **Policy**. Such notice must be sent within thirty (30) days of the acquisition of such subsidiary or affiliated company. If such notice is not provided, the newly acquired entity will not be considered a part of the **Policyholder** and the owner/operators or contract drivers will not be **Insured Persons** until the date that notice is provided. **We** have the right to decline coverage or adjust premium based on the changing exposure.

### YOUR PREMIUM

**Your** Premium is shown in the **Schedule** and shall be payable as follows:

1. if **You** enroll on or prior to the fifteenth (15th) day of the month, **You** shall pay an amount equal to the full monthly premium. No premium shall be payable for the last full or partial month of coverage; and

EXHIBIT 2

39

2. if **You** enroll after the fifteenth (15th) day of the month, **You** shall pay a premium equal to the full monthly premium beginning on the first of the month following the month during which coverage becomes effective. With respect to the last full or partial month of coverage, **You** shall pay an amount equal to the monthly premium.

## YOUR GRACE PERIOD

A grace period of thirty-one (31) days will be provided for the payment of **Your** Premium due after the first premium. **Your** coverage will not be terminated for non-payment of premium during this grace period if **You** pay the premium due by the last day of this grace period. **Your** coverage will terminate if the full amount of the premium due is not paid by the last day of this grace period.

## POLICY GRACE PERIOD

A grace period of thirty-one (31) days will be provided for the payment of any premium due after the first premium. The **Policy** will not be terminated for nonpayment of premium during this grace period if the **Policyholder** pays all premiums due by the last day of this grace period. The **Policy** will terminate on the premium due date if all premiums due are not paid by the last day of this grace period. No Policy Grace Period will be provided if **We** receive notice to terminate the **Policy** prior to a premium due date.

If **We** expressly agree to accept late payment of a premium without terminating the **Policy**, **We** do so in accordance with the Noncompliance With Policy Requirements provision in Section X of the **Policy**. In such case, the **Policyholder** will be liable to **Us** for any unpaid premiums for the time the **Policy** is in force, plus all costs and expenses (including, but not limited to, reasonable attorney fees, collection fees and court costs) incurred by **Us** in the collection of all overdue amounts.

## WAIVER OF PREMIUM

During the period in which **You** are receiving a Temporary Total Disability Benefit or Continuous Total Disability Benefit, premiums will be waived from the first premium due date on or after the benefit begins to the premium due date following the date the benefit ceases, at which time premium payments must resume. If premium payments are not resumed on that date, **Your** coverage under the **Policy** shall terminate on that date. **You** are responsible for reporting Waiver of Premium to the **Policyholder** or an authorized person designated by the **Policyholder** or **Us**.

## SECTION V - BENEFITS

### ACCIDENTAL DEATH BENEFIT

If **Injury** to **You** results in death within the **Commencement Period**, **We** will pay the **Principal Sum** to the beneficiary in accordance with the Payment of Claims provision in Section IX of the **Certificate**.

### SURVIVOR'S BENEFIT

If an Accidental Death Benefit is payable under the **Policy**, **We** will pay the **Monthly Benefit Amount**, up to the **Principal Sum**, to **Your** surviving **Spouse**.

If **You** are not survived by a **Spouse**, or if **Your Spouse** dies or remarries, **We** will pay or continue to pay the Survivor's Benefit to **Your** surviving **Dependent Child(ren)**, if any. If there is more than one surviving **Dependent Child**, the Survivor's Benefit will be distributed equally among the surviving **Dependent Children**. Payment of the **Monthly Benefit Amount** will end on the earliest of the following:

1. the date **Your Spouse** dies or remarries, if there are no **Dependent Child(ren)**;
2. the date **Your** last **Dependent Child** dies or is no longer a **Dependent Child**; or
3. the date the **Principal Sum** has been paid.

If **You** are not survived by a **Spouse** or any **Dependent Child(ren)**, **We** will not pay a Survivor's Benefit.

For this benefit, the following definition applies:

**Monthly Benefit Amount** means the product of the Monthly Benefit Percentage shown in the **Schedule** multiplied by the **Principal Sum**.

### EXPOSURE AND DISAPPEARANCE BENEFIT

If **You** are exposed to weather because of an **Accident**, which results in a **Covered Loss**, **We** will pay the applicable **Principal Sum**, subject to all **Policy** terms.

If **Your** body has not been found within one year after **Your** disappearance, stranding, sinking or wrecking of a power unit in which **You** were an occupant, then it will be presumed, subject to all other terms and provisions of the **Policy**, that **You**

EXHIBIT 2

40

have suffered Accidental Death within the meaning of the **Policy**.  If **You** are found and identified, **We** have the right to recover any benefits paid.

## ACCIDENTAL DISMEMBERMENT BENEFIT

If **Injury** to **You** results in any one of the **Losses** specified below within the **Commencement Period**, **We** will pay the Percentage of the **Principal Sum** shown below:

| For **Loss** of: | Percentage of the **Principal Sum** |
|---|---|
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |
| One Foot or One Hand | 50% |
| Sight of One Eye | 50% |
| Thumb and Index Finger of Same Hand | 25% |

If more than one **Loss** is sustained by **You** as a result of the same **Accident**, only one amount, the largest, will be paid.

For this benefit, the following definition applies:

**Loss**, in the singular or plural, of a hand or foot means complete severance through or above the wrist or ankle joint; **Loss** of sight of an eye means total and irrecoverable loss of the entire sight in that eye; and **Loss** of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

## PARALYSIS BENEFIT

If **Injury** to **You** results in any Type of Paralysis specified below within the **Commencement Period**, **We** will pay the Percentage of the **Principal Sum** shown below:

| Type of Paralysis: | Percentage of the **Principal Sum** |
|---|---|
| Quadriplegia | 100% |
| Paraplegia | 75% |
| Hemiplegia | 50% |
| Uniplegia | 25% |

If **You** sustain more than one Type of Paralysis as a result of the same **Accident**, only the largest single amount will be considered a **Covered Loss**.

For this benefit, the following definitions apply:

**Quadriplegia** means the complete and irreversible paralysis of both upper and both lower **Limbs**.

**Paraplegia** means the complete and irreversible paralysis of both lower **Limbs**.

**Hemiplegia** means the complete and irreversible paralysis of the upper and lower **Limbs** of the same side of the body.

**Uniplegia** means the complete and irreversible paralysis of one **Limb**.

**Limb**, in the singular or plural, means entire arm or entire leg.

## TEMPORARY TOTAL DISABILITY BENEFIT

If **Injury** to **You** results in Temporary Total Disability within the **Commencement Period** and **You** are under age 70 on the day the **Temporary Total Disability** begins, **We** will pay the following amount, after the **Waiting Period**:

1. for each week of a **Temporary Total Disability** during a **Single Period of Total Disability** the Temporary Total Disability Benefit is equal to the lesser of:
   a. the Benefit Percentage shown in the **Schedule** of the **Average Weekly Earnings**; or
   b. the **Maximum Weekly Benefit Amount**;
2. for less than a full **Benefit Week** of **Temporary Total Disability**, the Temporary Total Disability Benefit is one seventh (1/7) of the **Weekly Benefit Amount** for each day of **Temporary Total Disability**.

U-OA-402-A IL (08/09)                                                                                              Page 11 of 22

**EXHIBIT 2**

**41**

The Temporary Total Disability Benefit shall cease on the earliest of the following:

1. the date **You** are no longer **Temporarily Totally Disabled;**
2. the date **You** die;
3. the date the **Maximum Benefit Period** has been reached; or
4. the date on which the **Temporary Total Disability** is not substantiated by objective medical evidence satisfactory to **Us.**

For this benefit, the following definitions apply:

**Average Weekly Earnings** means:

1. for **Owner/Operators:**
   Thirty-three percent (33%) of the gross income **You** received, less fuel surcharges, in the twelve (12) weeks prior to the **Injury**, divided by twelve (12). If **You** worked less than twelve (12) weeks prior to the **Injury**, then thirty-three percent (33%) of the gross income received, divided by the number of weeks worked. **You** will have to produce proof of the number of weeks worked, if **You** worked less than twelve (12) weeks. If **You** sustain an **Injury** within seven (7) days of **Your** contract date with the **Policyholder**, **We** will use thirty-three percent (33%) of the average gross income received by other **Insured Persons** who were contracted within the last three (3) months prior to the **Injury**. If **You** and/or the **Policyholder** are unwilling or unable to produce any evidence of the gross income received in the twelve (12) weeks prior to the **Injury**, then **We** will use thirty-three percent (33%) of the gross income **You** received in the prior year as shown on **Your** federal income tax return with schedules or 1099s, divided by fifty-two (52), regardless of **Your** prior occupation.

2. for **Contract Drivers:**
   Seventy-five percent (75%) of the gross income **You** received in the twelve (12) weeks prior to the **Injury**, divided by twelve (12). If **You** worked less than twelve (12) weeks prior to the **Injury**, then seventy-five percent (75%) of the gross income received, divided by the number of weeks worked. **You** will have to produce proof of the number of weeks worked, if **You** worked less than twelve (12) weeks. If **You** sustain an **Injury** within seven (7) days of **Your** contract date with the **Policyholder**, **We** will use seventy-five percent (75%) of the average gross income received by other **Insured Persons** who were contracted within the last three (3) months prior to the **Injury**. If **You** and/or the **Policyholder** are unwilling or unable to produce any evidence of the gross income received in the twelve (12) weeks prior to the **Injury**, then **We** will use seventy-five percent (75%) of the gross income **You** received in the prior year as shown on **Your** federal income tax return with schedules or 1099s, divided by fifty-two (52), regardless of **Your** prior occupation provided **You** were not an **Owner/Operator**. If **You** were an **Owner/Operator**, then **We** will use 33% of the gross income.

**You** must produce proof of **Your** gross income and the number of weeks worked. Otherwise, **We** will pay the Minimum Benefit.

**Weekly Benefit Amount** means the lesser of seventy percent (70%) of the **Average Weekly Earnings** or the **Maximum Weekly Benefit Amount**. In no event will the **Weekly Benefit Amount** be less than the **Minimum Weekly Benefit Amount**.

**Benefit Week** means a seven (7) day period beginning on the first day of **Temporary Total Disability** after the **Waiting Period** and on the same day of each week thereafter.

**Continuous Care** means monthly monitoring or evaluation of the disabling condition by a **Physician**. **We** must receive proof of continuing **Temporary Total Disability** on a monthly basis.

**Single Period of Total Disability** means all periods of **Temporary Total Disability** due to the same or related causes (whether or not insurance has been interrupted) except any of the following, which are considered separate periods of disability:

1. successive periods of **Temporary Total Disability** due to entirely different and unrelated causes, separated by at least one full day during which **You** are not **Temporarily Totally Disabled**; or
2. successive periods of **Temporary Total Disability** due to the same or related causes, separated by at least six (6) months during which **You** are not **Temporarily Totally Disabled.**

**Temporary Total Disability or Temporarily Totally Disabled** means disability that:

1. prevents **You** from performing the **Material and Substantial Duties** of **Your** occupation as a commercial truck driver;
2. requires the care and treatment of a **Physician**; and
3. requires that and results in **Your** receiving **Continuous Care.**

EXHIBIT 2

42

If **You** do not adhere to the treatment plan the **Physician** prescribes relating to **Your** disabling condition, **You** shall not qualify for the Temporary Total Disability Benefit.  During this period, **You** cannot engage in any activity which results in earned income.

**Material and Substantial Duties** means a duty or duties which **You** are required to perform under the terms of the written contract with the **Policyholder** or **Owner/Operator** and as described in **Your** application.

**Offsets**

Subject to the **Minimum Weekly Benefit Amount**, the Temporary Total Disability Benefit shall be reduced by:
1.  Social Security disability benefits excluding any amounts for which **Your** dependents may qualify because of **Your** disability;
2.  Social Security retirement benefits;
3.  the amount of any disability income benefits from any **Third Party; and**
4.  the amount **You** receive as compensation for lost wages or lost income in a lawsuit or the settlement of a lawsuit.

**You** must provide tax schedules and returns to **Us** for the purpose of calculating this offset.

**CONTINUOUS TOTAL DISABILITY BENEFIT**

If **Injury** to **You** resulting in **Temporary Total Disability** subsequently results in **Continuous Total Disability, We** will pay the following, after the **Waiting Period:**
1.  for each month of a **Continuous Total Disability**, the Continuous Total Disability Benefit is four and three-tenths (4.3) times the **Weekly Benefit Amount for Temporary Total Disability;** or
2.  for less than a full **Benefit Week** of **Continuous Total Disability**, the Continuous Total Disability Benefit is one seventh (1/7) of the **Weekly Benefit Amount** for each day of **Continuous Total Disability**, but only if:
    a.  Temporary Total Disability Benefits ceased solely because the **Maximum Benefit Period** has been reached, but **You** remain disabled;
    b.  **You** are not within six (6) months or less of attaining **Your** full Social Security retirement age, as defined by the United States Social Security Administration, on the day after the **Maximum Benefit Period** for **Temporary Total Disability** has been reached;
    c.  **You** have been granted a Social Security disability award for **Your** disability (if **You** cannot meet the credit requirement for a Social Security disability award **You** cannot qualify for the Continuous Total Disability Benefit even if **You** would otherwise qualify);
    d.  **Your** disability is reasonably expected to continue without interruption until **You** die and is substantiated by objective medical evidence satisfactory to **Us**;
    e.  the **Injury** resulting in a **Continuous Total Disability** occurred before **You** are within six (6) months or less of attaining **Your** full Social Security retirement age, as defined by the United States Social Security Administration; and
    f.  the **Injury** began within the **Commencement Period; and**
    g.  the **Temporary Total Disability** was not principally due to a **Mental and Nervous or Depressive Condition.**

The Continuous Total Disability Benefit shall cease on the earliest of the following:
1.  the date **You** are no longer **Continuously Totally Disabled;**
2.  the date **You** die;
3.  the date **Your** Social Security disability award ceases;
4.  the date the **Maximum Benefit Period** has been reached;
5.  the date that the **Maximum Benefit Amount** has been paid; or
6.  the date on which **Continuous Total Disability** is not substantiated by objective medical evidence satisfactory to **Us**.

For this benefit, the following definitions apply:
**Average Weekly Earnings** will be calculated as follows:
1.  for **Owner/Operators:**
    Thirty-three percent (33%) of the gross income **You** received, less fuel surcharges, in the twelve (12) weeks prior to the **Injury**, divided by twelve (12).  If **You** worked less than twelve (12) weeks prior to the **Injury**, then thirty-three percent (33%) of the gross income received, divided by the number of weeks worked.  **You** will have to produce proof of the number of weeks worked, if **You** worked less than twelve (12) weeks.  If **You** sustain an **Injury** within seven (7) days of **Your** contract date with the **Policyholder, We** will use thirty-three percent (33%) of the average gross income received by other **Insured Persons** who were contracted within the last three (3) months prior to the **Injury**.  If **You** and/or the **Policyholder** are unwilling or unable to produce any evidence of the gross income received in the twelve

**EXHIBIT 2**

**43**

(12) weeks prior to the **Injury**, then **We** will use thirty-three percent (33%) of the gross income **You** received in the prior year as shown on **Your** federal income tax return with schedules or 1099s, divided by fifty-two (52), regardless of **Your** prior occupation.

2. for **Contract Drivers**:
   Seventy-five percent (75%) of the gross income **You** received in the twelve (12) weeks prior to the **Injury**, divided by twelve (12). If **You** worked less than twelve (12) weeks prior to the **Injury**, then seventy-five percent (75%) of the gross income received, divided by the number of weeks worked. **You** will have to produce proof of the number of weeks worked, if **You** worked less than twelve (12) weeks. If **You** sustain an **Injury** within seven (7) days of **Your** contract date with the **Policyholder**, **We** will use seventy-five percent (75%) of the average gross income received by the other **Insured Persons**, who were contracted within the last three (3) months prior to the covered **Injury**. If **You** and/or the **Policyholder** are unwilling or unable to produce any evidence of the gross income received in the twelve (12) weeks prior to the **Injury**, then **We** will use seventy-five percent (75%) of the gross income **You** received in the prior year as shown on **Your** federal income tax return with schedules or 1099s, divided by fifty-two (52), regardless of **Your** prior occupation provided **You** were not an **Owner/Operator**. If **You** were an **Owner/Operator**, then **We** will use 33% of the gross income.

**You** must produce proof of **Your** gross income and the number of weeks worked. Otherwise, **We** will pay the Minimum Benefit.

**Weekly Benefit Amount** means the lesser of seventy percent (70%) of the **Average Weekly Earnings** or the Maximum Weekly Benefit. In no event will the **Weekly Benefit Amount** be less than the **Minimum Weekly Benefit Amount**.

**Benefit Week** means a seven (7) day period beginning on the day after the **Maximum Benefit Period** for **Temporary Total Disability** has been reached, and on the same day of each week thereafter.

**Continuous Total Disability or Continuously Totally Disabled** means disability that:
1. prevents **You** from performing the duties of any occupation for which **You** are qualified by reason of education, training or experience;
2. requires the care and treatment of a **Physician**; and
3. requires that, and results in, **Your** receiving **Continuous Care**.

**We** must receive proof of continuing **Continuous Total Disability** on a quarterly basis; provided however, that **We** may waive requirements 2 and 3. If **You** do not adhere to the treatment plan the **Physician** prescribes relating to **Your** disabling condition, **You** shall not qualify for **Continuous Total Disability**. During this period, **You** cannot engage in any activity which results in earned income.

**Continuous Care** means at least quarterly monitoring or evaluation of the disabling condition by a **Physician**.

**Offsets**
Subject to the **Minimum Weekly Benefit Amount**, the Continuous Total Disability Benefit shall be reduced by:
1. Social Security disability benefits excluding any amounts for which **Your** dependents may qualify because of **Your** disability;
2. Social Security retirement benefits;
3. the amount of any disability income benefits from any **Third Party**; or
4. the amount **You** receive as compensation for lost wages or lost income in a lawsuit or the settlement of a lawsuit. **You** must provide tax schedules and returns to **Us** for the purpose of calculating this offset.

**ACCIDENT MEDICAL EXPENSE BENEFIT**
If **You** suffer an **Injury** requiring treatment by a **Physician** within the **Commencement Period**, **We** will pay the **Usual and Customary Charges** incurred for **Medically Necessary Services or Charges** received or incurred due to such **Injury**, up to the **Maximum Benefit Amount** and **Maximum Benefit Period** for all **Injuries** caused by a single **Accident**, subject to any applicable **Deductible Amount**.

For this benefit, the following definitions apply:
**Ambulatory Medical Center** means a facility that:
1. operates under the laws of the state in which it is situated;
2. has a staff of **Physicians** and permanent facilities that are equipped and operated primarily for the purpose of providing medical services or performing subject procedures; and
3. provides continuous **Physician** and Graduate Registered Nurse (RN) services whenever a patient is in the facility.

EXHIBIT 2
44

**Ambulatory Medical Center** does not include a **Hospital, Physician's** office or clinic.

**Custodial Services** means any services which are not intended primarily to treat a specific injury.  **Custodial Services** include, but shall not be limited to, services:

1.  related to watching or protecting **You**;
2.  related to performing or assisting **You** in performing any activities of daily living, such as:
    a.  walking;
    b.  grooming;
    c.  bathing;
    d.  dressing;
    e.  getting in or out of bed;
    f.  toileting;
    g.  eating;
    h.  preparing foods; or
    i.  taking medications that can usually be self-administered; and
3.  that are not required to be performed by trained or skilled medical or paramedical personnel.

**Durable Medical Equipment** means equipment of a type that is designed primarily for use by people who are injured (for example, a wheelchair or a **Hospital** bed).  It does not include items commonly used by people who are not injured, even if the items can be used in the treatment of **Injury** or can be used for rehabilitation or improvement of health (for example, a spa or a stationary bicycle).

**Deductible Amount** means the total amount of **Medically Necessary Services or Charges** that must be paid by **You** before any Accident Medical Expense Benefit is paid under the **Policy**.  **We** shall not be responsible for any **Medically Necessary Services or Charges** within the **Deductible Amount** as set forth in the **Schedule**.

**Extended Care Facility** means an institution that meets all of the following requirements:

1.  operates under the laws of the state that it is situated in;
2.  is approved by the United States Department of Health and Human Services or its successor;
3.  is regularly engaged in providing skilled nursing care of sick or injured persons as inpatients at the patient's expense;
4.  provides 24 hour a day nursing service by or under the supervision of a registered nurse;
5.  provides skilled nursing care under the supervision of a **Physician**; and
6.  maintains a daily medical record of each patient.

**Home Health Care** means nursing care and treatment of **You** in **Your** home as part of a treatment plan prescribed by the attending **Physician**, which is provided by a **Hospital** or agency certified to provide such services, but only if it:

1.  begins within seven (7) days after discharge from a **Hospital**; and
2.  follows a **Hospital** confinement of five (5) days or more.

**Hospital** means a facility that:

1.  operates under the law of the state in which it is situated;
2.  is approved by the United States Department of Health and Human Services or its successor;
3.  has organized facilities for diagnosis and surgery on its premises or in facilities available to it on a prearranged basis;
4.  has 24-hour nursing service by registered nurses on duty or on call; and
5.  is supervised by one or more **Physicians**.

A **Hospital** does not include:

1.  a nursing, convalescent or geriatric unit of a **Hospital** when a patient is confined mainly to receive nursing care;
2.  a facility that is, other than incidentally, a rest home, nursing home, convalescent home or home for the aged, or any ward, room, wing or other section of a hospital that is used for such purposes; or
3.  any military or veterans **Hospital** or soldiers home or any **Hospital** contracted for or operated by any national government or government agency for the treatment of members or ex-members of the armed forces.

**Medically Necessary Services or Charges** means one or more of the following, but only if each: (a) is essential for diagnosis, treatment or care of the **Injury** for which it is prescribed or performed; (b) meets generally accepted standards of medical practice; and (c) is ordered by a **Physician** and performed under his or her care, supervision or order:

1.  **Hospital** room and board charges or room and board charges in an intensive care unit; **Hospital** ancillary services

**EXHIBIT 2**

**45**

(including but not limited to, use of the operating room or emergency room); use of an **Ambulatory Medical Center;** and **Hospital** charges for in-patient treatment of a **Mental and Nervous or Depressive Condition,** as shown in the **Schedule;**

2. treatment by a **Physician** of a covered **Mental and Nervous or Depressive Condition** due to an **Injury**, as shown in the **Schedule;**
3. Ambulance service to or from a **Hospital**, as shown in the **Schedule;**
4. laboratory tests;
5. radiological procedures;
6. anesthetics and the administration of anesthetics;
7. blood, blood products and artificial blood products, and the transfusion thereof;
8. Physical, Occupational or Work Hardening Therapies, Chiropractic Care and Acupuncture, as shown in the **Schedule;**
9. **Durable Medical Equipment** rental charges, up to the actual purchase price of such equipment;
10. the initial supply, but not any replacement of: casts, splints, trusses, braces, artificial limbs and artificial eyes;
11. medicines or drugs administered by a **Physician** or that can be obtained only with a **Physician's** written prescription;
12. repair or replacement of **Sound Natural Teeth** damaged or lost as a result of **Injury**, up to the Dental Benefit Maximum, if any, shown in the **Schedule;**
13. **Extended Care Facility**; or
14. **Home Health Care**.

**Personal Comfort or Convenience Item(s)** means those items that are not **Medically Necessary Services or Charges** for the care and treatment of the **Injury**, including but not limited to: (1) a non-essential private **Hospital** room; (2) television rental; and (3) **Hospital** telephone charges.

**Sound Natural Teeth** means natural teeth that are unaltered or are fully restored to their normal function and are disease free, have no decay, and are not more susceptible to injury than unaltered natural teeth.

**Usual and Customary Charge(s)** means an amount(s) that:
1. does not exceed the usual cost for similar treatment, services or supplies in the locality in which it is incurred; or for a **Hospital** room and board charge other than for stay in an intensive care unit, does not exceed the **Hospital's** most common charge for semi-private room and board or the fee set by the workers' compensation insurance fee schedule, if applicable; and
2. does not include charges that would not have been made if no insurance existed; and
3. does not exceed the cost of a generic drug, if available. **We** will only pay up to seventy-five percent (75%) of a non-generic drug if a generic drug is available.

## ACCIDENT MEDICAL EXPENSE BENEFIT EXCLUSIONS

In addition to the General Exclusions and Limitations in Section VIII of the **Policy, Medically Necessary Services or Charges** do not include expenses for or resulting from any of the following:
1. repair or replacement of existing artificial limbs, artificial eyes or other prosthetic appliances or repair of existing **Durable Medical Equipment** unless for the purpose of modifying the item because **Injury** has caused further impairment in the underlying bodily condition;
2. dentures, bridges, dental implants, dental bands or braces or other dental appliances, crowns, caps, inlays or onlays, fillings or any other treatment of the teeth or gums;
3. eye glasses or contact lenses;
4. hearing aids or hearing examinations;
5. rental of **Durable Medical Equipment** if the total rental expense exceeds the usual purchase price for similar equipment in the locality where the expense is incurred, unless authorized by **Us;**
6. **Custodial Services;**
7. **Personal Comfort or Convenience Items;**
8. services of any government **Hospital** for which **You** are not liable for payment;
9. any expenses covered by a **Third Party;**
10. expenses incurred which are more than the **Usual and Customary Charge;**
11. cosmetic, plastic or restorative surgery unless otherwise covered;
12. expenses which **You** are not legally obligated to pay;
13. an **Extended Care Facility** stay that does not follow a **Hospital** confinement of five (5) days or more;
14. any mileage costs or lodging expenses, unless authorized by **Us;**

EXHIBIT 2

46

15. any translation costs, unless authorized by **Us**; or
16. **Home Health Care** services provided by an **Immediate Family Member** or **Household Member**.

## SECTION VI - ADDITIONAL BENEFITS

## SECTION VII - LIMITS OF LIABILITY

The **Combined Single Limit of Liability** shown in the **Schedule** is the maximum amount **We** will pay under the **Policy** for all **Covered Loss** with respect to **You** arising out of **Injury** sustained by **You** as the result of any one **Accident** or Occurrence.  The term Occurrence means a single event or related events or originating cause occurring within a 24-hour period.

The **Aggregate Limit of Liability** shown in the **Schedule** is the maximum amount **We** will pay under the **Policy** for all **Covered Losses** with respect to all **Insured Persons** arising out of all **Injuries** sustained as the result of any one **Accident**.

If either the **Combined Single Limit of Liability** or the **Aggregate Limit of Liability** is not enough to pay all **Covered Loss**, **We** will pay reduced benefit amounts based upon the proportion that the **Covered Loss** bears to each benefit or expected total benefits that would otherwise be payable.  If the total benefits are unknown, **We** will determine the total expected benefits for **You**.

Limitation on Multiple **Covered Loss**.  If **You** suffer more than one **Covered Loss** under one benefit as a result of the same **Accident**, **We** will pay only up to the largest **Covered Loss** amount.

Limitation on Multiple Benefits.  If **You** can recover benefits under two or more of the Accidental Death Benefit, Accidental Dismemberment Benefit, Coma Benefit or the Accidental Paralysis Benefit as a result of the same **Accident**, **We** will pay only up to the highest applicable **Principal Sum**.

## SECTION VIII - GENERAL EXCLUSIONS AND LIMITATIONS

The **Policy** does not cover any losses which are the direct result of any of the following:
1. suicide or any attempt at suicide; intentionally self-inflicted **Injury** or any attempt at intentionally self-inflicted **Injury** or any **Injury** resulting from a provoked attack;
2. sickness, disease or infections of any kind, except bacterial infections due to an accidental cut or wound, botulism or ptomaine poisoning or routine and temporary non chronic sickness or illness such as a cold, cough, headache or nausea;
3. a **Pre-existing Condition**, until **You** have been continuously covered under the **Policy** for twelve (12) consecutive months;
4. **Occupational Cumulative Trauma** or **Cumulative Trauma and Repetitive Conditions**, unless shown in the **Schedule**;
5. **Occupational Disease**, unless shown in the **Schedule**;
6. performing, learning to perform or instructing others to perform as a crew member of any vessel while covered under the Jones Act or the United States Longshoremen and Harbor Workers' Act, or similar coverage;
7. declared or undeclared war, or any act of declared or undeclared war;
8. full-time active duty in the armed forces of any country or international authority;
9. any **Injury** for which **You** are entitled to benefits pursuant to any workers' compensation law or other similar legislation;
10. any loss insured by employers' liability insurance;
11. **You** being intoxicated:
    a. **You** are conclusively deemed to be intoxicated if the level of alcohol in **Your** blood exceeds the amount at which a person is presumed, under the law of the locale in which the **Accident** occurred, to be under the influence of alcohol or intoxicating liquor if operating a motor vehicle, regardless of whether **You** are in fact operating a motor vehicle when the **Injury** occurs; and
    b. an autopsy report from a licensed medical examiner, law enforcement officer reports or similar items will be considered proof of **Your** intoxication;
12. **You** being under the influence of any illegal substance, drug, narcotic, or hallucinogen, unless such drug, narcotic, or hallucinogen was prescribed by a **Physician** and taken in accordance with the prescribed dosage;

U-OA-402-A IL (08/09)

EXHIBIT 2
47

13. **Your** commission of or attempt to commit a felony or a Class A misdemeanor;
14. travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, if **You** are:
    a.  riding as a passenger in any aircraft not intended or licensed for the transportation of passengers;
    b.  performing, learning to perform or instructing others to perform as a pilot or crew member of any aircraft; or
    c.  riding as a passenger in an aircraft owned, leased or operated by the **Policyholder** or **You;**
15. skydiving, parasailing, hang-gliding, bungee-jumping or any similar activity; or
16. charges incurred for treatment of a covered **Injury**, when **You** obtain compensation for the covered **Injury** from a **Third Party.**

INCARCERATION LIMITATION
Benefits provided to **You** will cease while **You** are incarcerated in a penal facility.  The benefit will resume, as if the benefits had been paid, subject to all **Policy** conditions, when **You** are released from such facility.

## SECTION IX - CLAIM PROVISIONS

**NOTICE OF CLAIM**
Written notice of claim must be received by **Us** within twenty (20) days after **Your** loss, or as soon thereafter as reasonably possible.  Notice given by or on behalf of the claimant to **Us** at Zurich American Insurance Company Group Accident Claims Division, P.O. Box 968041 Schaumburg, IL 60196 with information sufficient to identify **You**, is deemed notice to **Us**.

**CLAIM FORMS**
**We** will send claim forms to the claimant upon receipt of a written notice of claim.  If such forms are not sent within thirty (30) days after the giving of notice, the claimant will be deemed to have met the Proof of Loss requirements upon submitting, within the time fixed in the **Policy** for filing Proofs of Loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.  The notice should include **Your** name, the **Policyholder's** name and the Policy Number.

**PROOF OF LOSS**
Written Proof of Loss acceptable to **Us** must be received by **Us** within ninety (90) days after the date of the loss.  If the loss is one for which the **Policy** requires continuing eligibility for periodic benefit payments, subsequent written proof acceptable to **Us** must be received by **Us**, at such intervals as **We** may reasonably require, establishing continued eligibility for the benefit.  Failure to furnish such proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give such proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time such proof is otherwise required.  **We** have a right to investigate any documents that **You** shall make available to **Us** upon request.

**PAYMENT OF CLAIMS**
Upon receipt of written proof of death, payment for loss of life of **You** will be made to **Your** beneficiary or, if there is no beneficiary designated, **Your** survivors in the following order:
1.  **Your Spouse;**
2.  **Your** child(ren);
3.  **Your** parents;
4.  **Your** brothers and sisters;
5.  **Your** estate.

Upon receipt of written Proof of Loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) **You**.  If **You** die before all payments due have been made, the amount still payable will be paid to **Your** beneficiary or, if there is no beneficiary designated, **Your** survivors in the order as listed above.

**BENEFICIARY DESIGNATION AND CHANGE**
**Your** designated beneficiary(ies) is (are) the person(s) so named by **You** as shown on the **Policyholder's** records kept on the **Policy**.

A legally competent **Insured Person** over the age of majority may change his or her beneficiary designation at any time, unless an irrevocable designation has been made.  The change may be executed, without the consent of the designated beneficiary(ies), by providing the **Policyholder** with a written request for change.  When the request is received by the

EXHIBIT 2
48

**Policyholder**, whether the **Insured Person** is then living or not, the change of beneficiary will relate back to and take effect as of the date of execution of the written request, but without prejudice to **Us** on account of any payment which is made prior to receipt of the request.

Except for the Survivor's Benefit, if there is no designated beneficiary or no designated beneficiary is living after **Your** death, payment will be made to **Your** estate.

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property. If the payee has no legal guardian for his or her property, a payment not exceeding one thousand dollars ($1,000) may be made, at **Our** option, to any relative by blood or connection by marriage of the payee, who, in **Our** opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

**We** shall pay benefits directly to any **Hospital** or person rendering covered services, unless **You** request otherwise in writing and provides proof that payment was made directly to such **Hospital** or person. Such request must be made no later than the time Proof of Loss is filed. Any payment **We** make in good faith fully discharges **Our** liability to the extent of the payment made.

**TIME OF PAYMENT OF CLAIM**
Benefits payable under the **Policy** for any loss other than loss for which the **Policy** provides any periodic payment will be paid within thirty (30) days upon **Our** receipt of written Proof of Loss. Benefits payable periodically under the **Policy** will be paid at four (4) week intervals during the continuance of the period for which **We** are liable, subject to **Our** receipt of written Proof of Loss, and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

**REHABILITATION**
**We** will consider paying for a rehabilitation program for **You** based on an **Occupational Assessment** provided **You** are receiving benefits under either the **Temporary Total Disability Benefit** or the **Continuous Total Disability Benefit**. The rehabilitation program must be mutually agreed upon by **You** and **Us**. The extent of **Our** participation will be determined solely by **Us**. Any benefits payable will continue during **Your** rehabilitation unless otherwise agreed to by **Us**.

**SUNSET**
In no event shall benefits under the **Policy** be payable unless written Proof of Loss is received by **Us** within three (3) years from the date of the **Accident**.

EXHIBIT 2

49

## ARBITRATION

An arbitration provision is not a substitute for **Your** right to maintain a legal action if **You** so desire, and in no way affects or limits **Your** ability to take legal action in a court of law, **prior to voluntarily agreeing to enter into an arbitration proceeding**.

Any controversy of claim arising out of or relating to the **Policy**, or the breach thereof, **may be** settled by arbitration. The arbitration will be conducted pursuant to the applicable rules of the American Arbitration Association and in accordance with the Uniform Arbitration Act 710 ILCS 51 et seq. within a reasonable time limit (30) (thirty) days after the parties agree to arbitrate their dispute is a reasonable time limit for selecting and appointing independent arbitrators, 15 (fifteen) days is a reasonable time limit for an expedited review). The arbitration **may be** binding on both parties, but in all instances **must be entered into on a voluntary basis**. Arbitrators must be fair, impartial, and free of any conflicts of interest or the appearance of a conflict of interest.

**By voluntarily agreeing to enter into an arbitration proceeding, the parties should be aware and understand that they may be giving up certain rights to have their dispute settled in and by a court of law, except to the extent Illinois law may provide for judicial review of arbitration proceedings.**

The arbitration shall occur at the offices of the American Arbitration Association nearest to **You** or the person claiming to be the beneficiary. The arbitrator(s) shall not award consequential or punitive damages in any arbitration under this section. This provision does not apply if **You** or the person claiming to be the beneficiary is a citizen of a state where the law does not allow binding arbitration in an insurance policy but only if the **Policy** is subject to its laws. In such a case, binding arbitration does not apply. This provision bars the institution of any individual or class action lawsuit brought by **You** or the beneficiary if the parties voluntarily agree to an arbitration proceeding.

Any arbitration provision in no way affects **Your** ability to file a complaint with the Illinois Department of Financial and Professional Regulation, Division of Insurance, Consumer Services division, 320 West Washington, Springfield, Illinois 62727.

## SECTION X - GENERAL PROVISIONS

### ENTIRE CONTRACT

The **Policy**, together with any riders, endorsements, amendments, applications, enrollment forms and attached papers, if any, make up the entire contract between the **Policyholder** and **Us**. In the absence of fraud, all statements made by the **Policyholder** or any **Insured Person** will be considered representations and not warranties. No written statement made by **You** will be used in any contest unless a copy of the statement is furnished to **You** or **Your** beneficiary or personal representative.

No changes in the **Policy** will be valid until approved by an officer of **Our's**. The approval must be noted on or attached to the **Policy**. No agent may change the **Policy** or waive any of its provisions.

### CERTIFICATE OF INSURANCE

**We** will provide the **Policyholder** with a Certificate of Insurance, in either paper or electronic format, for delivery to each **Insured Person**, where required by state law. Such Certificate of Insurance will contain a summary of terms that affect benefits.

### INCONTESTABILITY

The validity of the **Policy** will not be contested after it has been in force for two year(s) from the Policy Effective Date shown in the **Schedule**, except as to nonpayment of premiums.

### POLICYHOLDER RECORDS

The **Policyholder** will keep a record of the coverage, premium, beneficiary designation and other pertinent administrative information for each **Insured Person** which, if acceptable to **Us**, shall be deemed to be a part of the **Policy**. **We** may examine these records at any reasonable time while the **Policy** is in force and for six (6) years after the termination of the **Policy**. The **Policyholder** will report to **Us** within a reasonable time all changes in information regarding an **Insured Person**. The **Policyholder** shall indemnify **Us** for any benefits or other payments that are caused in whole or in part by the **Policyholder's** negligence or error in performing the administration described herein.

### PHYSICAL EXAMINATION AND AUTOPSY

**We** have the right, at **Our** own expense, to examine the **Insured Person** whose **Injury** is the basis of a claim, when and as often as it may be reasonably required while a claim is pending. **We** may also require an autopsy where it is not prohibited by law.

EXHIBIT 2

50

## LEGAL ACTIONS

In those states where binding arbitration is not allowed, no legal action for a claim can be brought against **Us** until sixty (60) days after receipt of written Proof of Loss.  In those states where binding arbitration is not allowed, no legal action for a claim can be brought against **Us** more than three (3) years (six (6) years in South Carolina and Wisconsin, five (5) years in Kansas, Florida and Tennessee) after the time for giving written Proof of Loss.  In those states where binding arbitration is allowed, binding arbitration shall supersede this provision.

## NONCOMPLIANCE WITH POLICY REQUIREMENTS

Any express waiver by **Us** of any requirements of the **Policy** will not constitute a continuing waiver of such requirements. Any failure by **Us** to insist upon compliance with any **Policy** provision will not operate as a waiver or amendment of that provision.

## CONFORMITY WITH STATE STATUTES

Any provision of the **Policy** that, on its effective date, is in conflict with the statutes of the state in which the **Policy** was delivered, is hereby amended to conform to the minimum requirements of such laws.

## CLERICAL ERROR

Clerical error, whether by the **Policyholder**, the Producer or **Us**, in keeping records pertaining to the **Policy**, will not:

1.   invalidate coverage otherwise validly in force; or
2.   continue coverage otherwise validly terminated.

## DATA REQUIRED

The **Policyholder** must maintain adequate records acceptable to **Us** and provide any information required by **Us** relating to this insurance.

## AUDIT

**We** will have the right to inspect and audit, at any reasonable time, all records and procedures of the **Policyholder** that may have a bearing on this insurance.

## ASSIGNMENT

This **Policy** is non-assignable.

## SUBROGATION

**We** have the right to recover all payments including future payments, which **We** have made to **You** or on behalf of **Your** covered dependents, heirs, guardians or executors or will be obligated to pay in the future to **You**, from any **Third Party**. If **You** recover from any **Third Party**, **We** will be reimbursed first from such recovery to the extent of **Our** payments to **You**.  **You** agree to assist **Us** in preserving **Our** rights against any **Third Party**, including but not limited to, signing subrogation forms supplied by **Us**.

## MADE WHOLE DOCTRINE

**We** have the right to recover any and all first monies paid (or payable) to or on behalf of **You** and to any and all claims of or on behalf of **You**, to the extent of benefits paid by the **Policy**, and regardless of whether or not the beneficiary has been made whole.  Made whole shall include first dollar recovery with no offset for attorneys' fees.

## RIGHT TO RECOVER OVERPAYMENTS

In addition to any rights of recovery, reimbursement or subrogation provided to **Us** herein, when payments have been made by **Us** with respect to a **Covered Loss** in an amount in excess of the maximum amount of payment necessary to satisfy an obligation under the terms of the **Policy**, **We** shall have the right to recover such excess payment, from any person to whom such payments were made.  **We** maintain the right to offset the overpayment against other benefits payable to **You** (and **Your** assignee) under the **Policy** to the extent of the overpayment.

U-OA-402-A IL (08/09)

**EXHIBIT 2**

**51**

**CONDITIONAL CLAIM PAYMENT**

If **You** suffer a **Covered Loss** as the result of an **Injury** for which a **Third Party** may be liable, **We** will pay the amount of benefits otherwise payable under the **Policy**. However, if **You** receive payment from the **Third Party**, **You** agree to refund to **Us** the lesser of:

1.  the amount actually paid by **Us** for such **Covered Loss**; or
2.  an amount equal to the sum actually received from the **Third Party** for such **Covered Loss**.

If **You** do not receive payment from the **Third Party** for such **Covered Loss**, **We** reserve the right to subrogate under the Subrogation clause of the **Policy**.

At the time such **Third Party** liability is determined and satisfied, this amount shall be paid whether determined by settlement, judgment, arbitration or otherwise. This provision shall not apply where prohibited by law.

**CLAIMS FOR WORKERS' COMPENSATION AND OTHER INSURANCE**

No benefits shall be payable under the **Policy** for any loss for which **You** claim or file for any workers' compensation, employers' liability, occupational disease or similar law or any other insurance until such claim or filing is approved or denied. Upon approval or denial, **We** shall determine **Our** liability under the **Policy**. **We** reserve the right to recover, from **You**, any benefits paid under the **Policy** that are subsequently paid for under any workers' compensation, employers' liability, occupational disease or similar law or any other insurance.

Workers' Compensation Indemnification. If **You** are determined by a court of law or the appropriate state regulatory authority to be covered under workers' compensation insurance for a **Covered Loss**, any benefits for which **You** are eligible under the **Policy**, are payable to the person who was determined to be **Your** employer or such person's designee or assignee.

EXHIBIT 2

52

# Vocational Retraining Benefit Endorsement



**Zurich American Insurance Company**
1299 Zurich Way
Schaumburg, Illinois 60196

**THIS ENDORSEMENT CHANGES THE POLICY/CERTIFICATE. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the Truckers Occupational Accident Insurance Policy/Certificate.

IF THE **INSURED PERSON** RECEIVES PAYMENT UNDER THE CONTINUOUS TOTAL DISABILITY BENEFIT FOR HIS OR HER DISABILITY, THEN ANY BENEFIT PAID UNDER THE CONTINUOUS TOTAL DISABILITY BENEFIT WILL BE REDUCED BY THE AMOUNT THE **COMPANY** HAS PAID FOR **VOCATIONAL RETRAINING** UNDER THE VOCATIONAL RETRAINING BENEFIT.

It is hereby understood and agreed that the following changes are made and incorporated into the **Policy**/Certificate:

**SECTION VI – ADDITIONAL BENEFITS** is amended to include the following:

**VOCATIONAL RETRAINING BENEFIT**

If an **Insured Person** receives a weekly benefit amount under the Temporary Total Disability Benefit for a period of fifty-two (52) weeks and has received verification from his or her treating **Physician** that the **Insured Person's Injury** has resulted in the **Insured Person** being permanently unable to perform the **Material and Substantial Duties** of his or her occupation as a commercial truck driver, the **Company** will provide **Vocational Retraining** under the Vocational Retraining Benefit.  The weekly benefit amount under the Temporary Total Disability Benefit will continue while the **Insured Person** participates in **Vocational Retraining** approved and paid for by the **Company** so long as the **Insured** remains **Temporarily Totally Disabled** and the total number of weekly benefit payments made by the **Company** to the **Insured Person** under the Temporary Total Disability Benefit does not exceed the **Maximum Weekly Benefit Period.**

**Vocational Retraining** must begin within one hundred and four (104) weeks of the **Insured Person's Injury**.  The Vocational Retraining Benefit shall cease on the earliest of the following:

1.  the date the **Insured Person** completes the **Vocational Retraining;**

2.  the date the **Insured Person** obtains employment in any full-time job;

3.  the date the **Insured Person** receives a **Vocational Retraining** maximum benefit amount of fifty thousand dollars ($50,000); or

4.  the date the **Insured Person** receives fifty two (52) weeks of training.

The **Company** will work with the **Insured Person** to develop acceptable **Vocational Retraining**.  To determine whether **Vocational Retraining** is acceptable, the **Company** shall:

1.  require verification from the **Insured Person's** treating **Physician** that the **Insured Person's Injury** has resulted in the **Insured Person** being permanently unable to perform the **Material and Substantial Duties** of his or her occupation as a commercial truck driver;

2.  evaluate the **Insured Person's:**

    a.  education, training and experience;

    b.  physical and mental abilities; and

    c.  degree of motivation;

3.  perform an assessment of the labor force demand for workers in the proposed occupation; and

4.  evaluate the expected length of the disability and whether the **Vocational Retraining** is likely to assist the worker in returning to a full time occupation.

**EXHIBIT 2**

**53**

The **Company** must agree on a retraining plan with the **Insured Person** before the **Insured Person** begins **Vocational Retraining**.  The retraining plan will be developed from information gathered from:

1. the **Insured Person**;

2. his or her **Physician**;

3. a retraining counselor, when appropriate; and

4. the **Insured Person's** prospective employer.

The retraining plan must be in writing and provide the:

1. goals and objectives of **Vocational Retraining**;

2. **Company's** responsibility;

3. responsibility of the **Insured Person** and any third parties associated with the **Vocational Retraining**;

4. times, dates and costs of the **Vocational Retraining**; and

5. causes for termination of the **Vocational Retraining**.

If the **Insured Person** receives payment under the Continuous Total Disability Benefit for his or her disability, then any benefit paid under the Continuous Total Disability Benefit will be reduced by the amount the **Company** has paid for **Vocational Retraining** under the Vocational Retraining Benefit.

We shall not pay for any other **Vocational Retraining** covered by the **Insured Person's In Force Policy**.    We have the right to seek reimbursement for the **Vocational Retraining** from any party who is obligated to pay for such a program.

For this benefit, the following definitions apply:

**Continuous Care** means monthly monitoring or evaluation of the disabling condition by a **Physician**.  The **Company** must receive proof of continuing **Temporary Total Disability** on a monthly basis.

**In Force Policy** means any multiple group, group-type, family or individual health care policy covering the **Insured Person** and in effect at the time of the **Injury**, or subsequently thereafter, other than the **Policy** to which this rider is attached.

**Material and Substantial Duties** means a duty or duties which the **Insured Person** is required to perform under the terms of the written contract with the **Policyholder** or **Owner/Operator** and as described in the **Insured Person's** application.

**Temporary Total Disability** or **Temporarily Totally Disabled** means disability that:

1. prevents an **Insured Person** from performing the **Material and Substantial Duties** of his or her occupation as a commercial truck driver;

2. requires the care and treatment of a **Physician**; and

3. requires that and results in the **Insured Person** receiving **Continuous Care**.

If the **Insured Person** does not adhere to the treatment plan the **Physician** prescribes relating to his or her disabling condition, the **Insured Person** shall not qualify for the Temporary Total Disability Benefit.  During this period, the **Insured Person** cannot engage in any activity which results in earned income.

**Vocational Retraining** means a retraining program designed to assist the **Insured Person** in returning to a full-time occupation and includes:

1. vocational evaluation and counseling;

2. training, job modification or job placement;

3. equipment purchased by the **Insured Person** for which they are trained on the use of such equipment; or

4. other services that the **Company** deems reasonably necessary to help the **Insured Person** return to a full-time occupation.

**Vocational Retraining** does not include attendance in a college or university for the purposes of receiving an undergraduate or graduate degree.

U-OA-414-A IL (08/16)

**EXHIBIT 2**
**54**

Except for the above, this endorsement does not vary, alter, waive, or extend any of the terms of the **Policy**/Certificate to which it is attached.

Effective Date:  04/27/2018    Attached to and forming a part of Policy/Certificate No.   OCA 0281508-01

Signed for Zurich American Insurance Company by: _____    Date:  04/27/2018
                                                        President

**EXHIBIT 2**
**55**